INTAKE WATER COMPANY, Plaintiff,

v.

YELLOWSTONE RIVER COMPACT COMMISSION, Gary Fritz; George L. Christopulos and L. Grady Moore, as members of the Yellowstone River Compact Commission; Mike Greely, Attorney General of The State of Montana; Vernon Fahy, the State Engineer of the State of North Dakota; and the North Dakota State Water Commission, Defendants.

Civ. No. 1184.

United States District Court, D. Montana, Billings Division.

Oct. 25, 1983.

Stanley Hathaway, Cheyenne, Wyo., Peter Pauly, Loble & Pauly, Helena, Mont., Boyd Henderson, Associate Gen. Counsel, Tennessee Gas Trans, Houston, Tex., for plaintiff.

Donald MacIntyre, Montana Dept. of Natural Resources and Conservation, Helena, Mont., for defendant Yellowstone River Compact Com'n.

Joseph J. Cichy, Asst. Atty. Gen., Bismarck, N.D., A.E. Bielefeld, Billings, Mont., for defendant Vernon Fahy and North Dakota State Water Com'n.

Tim Hall, Asst. Atty. Gen., Helena, Mont., for defendants Fritz and Greely.

Lawrence J. Wolfe, Asst. Atty. Gen., Cheyenne, Wyo., Vicki W. Dunaway, Billings, Mont., for defendant Christopulos.

William R. Jones and Raymond B. Hunkins, Wheatland, Wyo., for State of Wyoming.

Before GOODWIN, Circuit Judge, BATTIN, Chief District Judge and HATFIELD, District Judge.

## MEMORANDUM OPINION

This suit for declaratory and injunctive relief is before the Court on a motion to dismiss the four-count second amended complaint. Jurisdiction is conferred by 28 U.S.C. § 1331 and complete diversity under 28 U.S.C. § 1332. When this case was filed on June 23, 1973, a three-judge panel was required by statute for cases such as this one seeking to declare state statutes unconstitutional. 28 U.S.C. § 2281 repealed by Act of August 12, 1976, 90 Stat. 1119. For the reasons discussed below, defendants' motion to dismiss is granted with respect to all Counts.

## FACTS

Intake Water Company, a wholly-owned subsidiary of Tenneco, Incorporated, is engaged in purchasing and developing water resources throughout the northwestern United States. Defendant Yellowstone River Compact Commission is charged with implementing a three-state water distribution agreement known as the Yellowstone River Compact. The signatory states are Montana, Wyoming and North Dakota.

The Yellowstone River Compact fixes the water usage of all the waters of the Yellowstone River Basin.[1] The Yellowstone River Compact was approved by the legislatures of the three states in early 1951 and by Congress by an Act of October 30, 1951, Public Law 231, 65 Stat. 663. The individual defendants are members of the Yellowstone River Compact Commission (the Commission), the Montana Attorney General and the State Engineer of North Dakota.

In June 1973, Intake Water Company (Intake) appropriated 80,650 acre feet per year (50,000 gallons per minute) of Yellowstone River water pursuant to Montana law. Intake planned to construct a water diversion and reservoir near Dawson, Montana, at a cost of approximately $20 million. Some of the water was to be diverted outside the Yellowstone River Basin for use in Montana and North Dakota and thus outside the jurisdiction of the Yellowstone River Compact. Intake filed this suit in late June 1973 for a determination of the constitutionality of a specific provision of the Yellowstone River Compact (the Compact) and a Montana statute requiring the permission of the Montana Legislature to export Montana water for use out of state.

In 1974, the instant case was stayed pending litigation in state court of a preliminary issue. In late 1976, the Montana Supreme Court affirmed the state district court decision in favor of Intake. No motion was made to dissolve the stay in the instant case until 1980. In that year, this Court issued an order to show cause why the case should not be dismissed for want of prosecution. Intake provided the Court with an affidavit listing the activities of Intake during the period from 1977 to 1980; the Court was satisfied that Intake had pursued the interests intended to be protected by this lawsuit during the period from 1977 to 1980 and allowed the case to continue.[2] Intake filed its second amended complaint in December 1981. Defendants moved to dismiss, and briefing continued during 1982. Oral argument on the motion to dismiss was heard April 19, 1983, before Judges Goodwin, Battin and Hatfield.

## PLAINTIFF'S CONTENTIONS

Intake seeks a declaration from this Court of the legality of the restrictions placed on interbasin and interstate transfers of Yellowstone River water. Article X of the Compact restricts interbasin uses of Yellowstone River water by requiring all signatory states to consent to interbasin diversion:

No waters shall be diverted from the Yellowstone River Basin without unanimous consent of all the signatory states [Montana, Wyoming, North Dakota]....

Another obstacle to the interstate diversion of Yellowstone River water was, at the time suit was filed, Montana Code Annotated (hereinafter MCA) § 85-1-121 (1979); however, the Montana legislature repealed this statute in its entirety during the 1983 session, effective April 29, 1983. 1983 Laws of Montana, Cptr. 706, House Bill No. 908. Consequently, consideration of the claims premised on this statute—Count I of Intake's second amended complaint—need not be addressed by the Court.

■ Count II attacks the constitutionality of Article X of the Yellowstone River Compact (quoted above in pertinent part) based on that article's alleged impermissible burden on interstate commerce in that it requires unanimous consent of three states before interbasin water transfer is allowed. Intake seeks both a declaratory judgment that Article X of the Compact is unconstitutional and a permanent injunction preventing enforcement. We find that

---

**1.** The Yellowstone River Basin is the drainage of the Yellowstone River and its tributaries, located mainly in Montana but also including parts of Wyoming and North Dakota.

**2.** After resolution of the state suit in late 1976, Intake applied to the Commission for permission to divert the sought-after waters with the expectation that if the request were granted the instant suit would be moot. The Commission determined that the state legislatures were the proper forum for Intake's request. Attempts to pass favorable legislation during Montana's 1979 session were futile.

because the Compact was ratified by Congress, Article X must be interpreted as federal law, immune from Commerce Clause attacks. Thus, Count II fails to state a claim for relief.

■■ Count III attacks the constitutionality of Article X of the Compact based on a denial of the Fourteenth Amendment right to equal protection. The equal protection claim arises because the right to divert Yellowstone River water out of the Basin is conditional pending consent of Montana, Wyoming and North Dakota, although interbasin diversion from other Montana rivers is not subject to the same constraint. Briefly stated, the guarantees of equal protection apply to people, not geographical areas, and, hence, Count III must be dismissed.

■■ Count IV seeks a declaration of this Court that the Compact does not apply to Intake's planned diversion. Intake claims that the Yellowstone River at Dawson, Montana, is not part of the waterway regulated by the Compact. Intake seeks an injunction permanently restraining enforcement of the Compact's prohibitions against the proposed interbasin water transfer from the diversion site at Dawson. Because the interpretation of the Compact necessary for Intake's contention to state a claim is totally without foundation, Count IV must be dismissed.

■■■ A motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) is viewed with disfavor because the primary objective of the legal system is to obtain a determination on the merits, not a dismissal based on pleadings rather than proof. *Rennie & Laughlin, Inc. v. Chrysler Corporation*, 242 F.2d 208 (9th Cir.1957). For this reason, a complaint is liberally construed in the light most favorable to the plaintiff. The Court must take as true the factual allegations of the complaint. *Experimental Engineering v. United Technologies*, 614 F.2d 1244 (9th Cir.1980); 2A Moore's Federal Practice, ¶ 12.08. A complaint will not be dismissed for failure to state a claim unless it is abundantly clear that the plaintiff is not entitled to any relief under any set of facts which could be proved in support of the claim. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jablon v. Dean Witter & Company*, 614 F.2d 677 (9th Cir.1980).

### DISCUSSION

#### COUNT II: Commerce Clause

Intake alleges in its Count II that Article X of the Compact, as state law, places a constitutionally impermissible burden on interstate commerce[3] because the Article requires unanimous consent from Montana, Wyoming and North Dakota before Yellowstone River water may be transferred outside the Yellowstone River Basin. Defendants do not directly contest the sufficiency of this count. Instead, defendants rely on the following argument: The Yellowstone River Compact, as a compact between states, was approved by the United States Congress; because the Compact was approved by Congress, the Compact is federal, not state law for consideration of Commerce Clause objections; therefore, the Compact cannot, by definition, be a state law impermissibly interfering with interstate commerce, but must be a federal law immune to Commerce Clause objections. We find this argument compelling. When Congress approved the Compact, Congress was acting within its authority to immunize state law from Commerce Clause objections by converting it to federal law. Therefore, Count II fails to state a claim for relief.

■ Strong authority supports the proposition that the Compact is federal law. *See Texas v. New Mexico*, 462 U.S. 554, 103 S.Ct. 2558, 77 L.Ed.2d 1 (1983); *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 507 F.2d 517 (9th Cir. 1974). Federal legislation is not subject to the restrictions that the Commerce Clause imposes on state laws affecting commerce. *Prudential Insurance Co. v. Benjamin*,

**3.** Constitution, Art. I, § 8, cl. 3.

328 U.S. 408, 423, 66 S.Ct. 1142, 1151, 90 L.Ed. 1342 (1946). Under the Commerce Clause, Congress may, unlike the states, enact legislation that affects states unequally. *Hodel v. Indiana*, 452 U.S. 314, 332, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981) (Congress may impose legislation that respects geographic differences). Thus, to the extent the Compact is federal law, this Court cannot invalidate it on the basis of its effects on interstate commerce.

■ Just as Congress may itself enact a law that interferes with interstate commerce, it may also give its approval to a state law interfering with interstate commerce and thereby immunize the law from challenge under the Commerce Clause. *See, e.g., Prudential Insurance Co. v. Benjamin*, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946). In many cases, the issue is whether Congress in fact approved the state law for which immunity from Commerce Clause attack is claimed. That is not an issue in the present case; the Compact was before Congress and Congress voted to approve it.

Because Congress voted directly on the Compact, the cases that require an express statement of Congressional intent to immunize state legislation from Commerce Clause challenge, *e.g., New England Power Co. v. New Hampshire*, 455 U.S. 331, 343, 102 S.Ct. 1096, 1102, 71 L.Ed.2d 188 (1982); *Sporhase v. Nebraska, ex rel. Douglas*, 458 U.S. 941, 102 S.Ct. 3456, 3466, 73 L.Ed.2d 1254 (1982), are inapposite. In those cases, Congress had enacted laws that dealt in general terms with a given subject, and it was argued that this general treatment of the subject revealed Congress's intent to immunize from Commerce Clause attack the state laws at issue in those cases. In *New England Power*, New Hampshire argued that a general saving clause in the Federal Water Power Act immunized the New Hampshire statute at issue from a Commerce Clause attack. In *Sporhase*, Nebraska argued that Congress's deference to state water law in various unrelated federal statutes and its approval of interstate compacts dealing with water rights showed that Congress intended to defer to other state statutes dealing with water rights, including the Nebraska statute at issue in *Sporhase*. In both cases, the state law at issue had not been placed directly before Congress for its approval. The Court held that Congress had not stated explicitly enough an intent to immunize the state statutes from Commerce Clause attacks and voided both statutes as impermissible burdens on interstate commerce. Here, Congress's approval of the Yellowstone River Compact in 1951 may be considered the express statement of intent to immunize the Compact from attack that the Court found lacking in *Sporhase*.

■ Furthermore, the Constitution requires congressional consent to an interstate compact only when the compact threatens to encroach upon the supremacy of the United States. A threat to the supremacy of the United States necessarily entails a threat to one of Congress's enumerated legislative powers since those powers are the source of supreme federal authority. Thus, when it approves a compact, Congress exercises the legislative power that the compact threatens to encroach upon, and declares that the compact is consistent with Congress's supreme power in that area. *See Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). In the present case, therefore, to the extent that the Compact interferes with interstate commerce, Congress has exercised its commerce power in approving the Compact. For the reasons discussed above, defendants' arguments that the Yellowstone River Compact is immune to Commerce Clause attack persuade this Court that defendants' motion to dismiss Count II should be granted.

### COUNT III: Equal Protection

Intake alleges in its Count III that it is a violation of equal protection under the Fourteenth Amendment for the Compact to restrict interbasin transfer of Yellowstone River water, while other water appropriations from other river basins in Montana do

not require consent of all the signatory states to the Compact. Second Amended Complaint, Count III, ¶ XII. For the reasons discussed below, Count III must be dismissed for failure to state a claim.

 It is well settled that the Fourteenth Amendment does not prohibit legislation that operates on a limited geographical area within a state:

[W]e have held that the equal protection clause relates to equality between persons as such, rather than between areas and that territorial uniformity is not a constitutional prerequisite. *McGowan v. Maryland,* 366 U.S. 420, 426–27, 81 S.Ct. 1101, 1105–06, 6 L.Ed.2d 393 (1960).

Legislation such as the Yellowstone River Compact, that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose. *Hodel v. Indiana,* 452 U.S. 314, 101 S.Ct. 2376, 2386, 69 L.Ed.2d 40 (1981); moreover, such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality. *Id.*

 That the signatory states have an interest in the equitable use and management of Yellowstone River water cannot be doubted. The means employed by the affected states to achieve this legitimate governmental purpose—an interstate compact—are quite logically limited to the states containing the Yellowstone River Basin. That the Compact is limited to the Yellowstone River Basin, and other river basins are not so managed, is not a constitutional defect. Differing conditions in different geographic areas may provide a reasonable basis for different legislative treatment. *See McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Considering the facts as alleged by Intake to be true, Intake cannot, as a matter of law, meet the heavy burden to show that the Yellowstone River compact is not rationally related to a legitimate governmental purpose. Since every water appropriation from the Yellowstone River Basin is subject to the Compact, there is no violation of the guarantees of equal protection. Therefore, Count III must be dismissed.

*COUNT IV: Compact Article V*

Intake alleges in its Count IV that the proposed diversion of Yellowstone River water at Dawson, Montana, is outside any regulatory provision of the Compact. Intake's claim is based on Article V of the Compact, which apportions among Wyoming and Montana unused and unappropriated waters of Wyoming-originating tributaries. These waters are defined by river flow between certain points; however, the Yellowstone River at the proposed diversion site is not specifically apportioned by Article V. Intake concludes that, because the water at the proposed diversion point is not specifically apportioned, Intake can divert Yellowstone River water without permission of the Commission. For the reasons discussed below, Intake's Count IV fails to state a claim and must be dismissed.

Article I of the Compact states:

Any individual, corporation, partnership, association, district, administrative department, bureau, political subdivision, agency, person, permittee, or appropriator authorized by or under the laws of a signatory state and all others using, claiming, or in any manner asserting any right to the use of the waters of the Yellowstone River system under the authority of said state shall be subject to the terms of this Compact.... Article I(B).

By the plain language of the above Article, Intake, a corporation seeking to use waters of the Yellowstone River under authority of the State of Montana, is subject to the terms of the Compact. *See generally Montana Department of Natural Resources and Conservation v. Intake Water Company,* 171 Mont. 416, 558 P.2d 1110 (1976) (Intake has a valid water appropriation for its planned diversion at Dawson, Montana).

Furthermore, contrary to the assertions of Intake, the Yellowstone River at Daw-

son is within the purview of the Compact. The Compact defines its terms in Article II. The term "Yellowstone River Basin" means the area in Wyoming, Montana and North Dakota drained by the Yellowstone River and its tributaries. Article II(C). The "Yellowstone River system" is defined as the Yellowstone River and all its tributaries, including springs and swamps, from their sources to where the Yellowstone River empties into the Missouri. Article II(D). "Water diversion" means taking or removing water from the Yellowstone River or any tributary when the water is not returned directly into the flowing water from which it is taken. Article II(G). The uncontroverted facts show that the planned diversion at Dawson is within the Yellowstone River Basin, and is on the Yellowstone River system, and is therefore within the purview of the Compact.

Intake misreads Article V of the Compact when it cites Article V as an exhaustive apportionment of Yellowstone River water. Article V only purports to allocate between Montana and Wyoming unused and unappropriated water of four tributaries of the Yellowstone that originate in Wyoming. The Compact refers to all the waters of the Yellowstone River Basin, not just the apportionment of the four principal Wyoming-originating tributaries.

Applying well-known rules of statutory construction and common sense, the plain meaning of Article V gives no support whatsoever to Intake's claim that its proposed diversion is outside the purview of the Compact. Taking all factual statements alleged by Intake as true, Count IV fails to state a claim.

Because the Court has disposed of each count of plaintiff's second amended complaint based on a separate consideration of the legal merit of each count, it is unnecessary for the Court to consider the general arguments raised by defendants, such as failure to join an indispensable party and exhaustion.

## CONCLUSION

After careful evaluation by this Court, we find that Intake Water Company's sec-ond amended complaint fails to state a claim for relief and must be dismissed.

An appropriate order in conformance with this Opinion will issue.