[Civ. No. 9613. First Appellate District, Division Two.—December 20, 1934.]

C. F. COLMAR, Appellant, v. M. E. PINCKARD, Respondent.

Peter tum Suden and Richard tum Suden for Appellant.

Sloss & Ackerman and Ackerman, Wayland & Mathews for Respondent.

STURTEVANT, J.—The plaintiff filed a complaint in the ordinary form asking for the rescission of a contract of the sale of the stock of a corporation. The complaint alleged certain misrepresentations as to the indebtedness of the corporation. The defendant answered and denied the material allegations of the complaint and set forth a separate defense in which he alleged that the plaintiff was not the real party in interest. The trial court made findings in favor of the defendant and from the judgment entered thereon the plaintiff has appealed. In his brief the plaintiff attacks nearly every single finding made by the trial court.

Prior to the first day of August, 1926, Victor Etienne, Jr., held a three-eighths interest in and was one of the corporate officers engaged in the management of Cyclops Iron Works, a factory located in San Francisco. At the same time he was the president of a life insurance company. M. E. Pinckard held the controlling interest and was one of the corporate officers engaged in the management of the Vulcan Iron Works, a competitor of the Cyclops Iron Works. Both factories were engaged in the manufacture, etc., of refrigeration machinery. M. E. Pinckard at the same time was engaged in the brokerage business. C. F. Colmar was employed by a real estate firm in San Jose. He had but little capital and that was invested in a venture the financial outcome of which was altogether problematical. He and Mr. Etienne had been acquainted for many years. Mr. Pinckard and Mr. Etienne had also been acquainted for many years and had had business dealings in the pur-

chase and sale of investment securities. A short time prior to the date last mentioned the Vulcan Iron Works had such financial difficulties that it was taken over by its creditors. Later the creditors liquidated their accounts and the management of the Vulcan Iron Works was turned back to its owners. The active management then rested in the hands of Robert Kemp. From time to time Mr. Pinckard and Mr. Etienne discussed the sale of the Vulcan Iron Works. Still later that subject was taken up in earnest. The discussions regarding the nature and extent of the property owned by the Vulcan Iron Works, the indebtedness thereof, the status of its accounts, and the sales price of the stock were taken up by Mr. Pinckard and Mr. Etienne. Finally the parties agreed on a sale of the corporate stock of the Vulcan Iron Works for the agreed price of $25,000, payable $5,000 on the twentieth day of October, 1926, and $5,000 on the twentieth day of each month thereafter to and including January 20, 1927. In carrying out the sale Mr. Etienne brought forward Mr. Colmar as the nominal purchaser and an escrow was opened at one of the banks. The seller produced the stock and deposited it in the escrow. Mr. Etienne promised to make the payments and thereafter did make the payments. Furthermore, from time to time he advanced to the Vulcan Iron Works such amounts as were necessary to carry on the business. When the last payment had been made the bank sent the certificates of stock to Mr. Colmar, who shortly thereafter delivered them to Mr. Etienne. No written contract was made between Mr. Etienne and Mr. Colmar which obligated Mr. Colmar as principal or otherwise.

When Mr. Etienne and Mr. Pinckard were discussing the contract to buy and sell, Mr. Etienne asked for a statement. Mr. Pinckard produced a statement of the Vulcan Iron Works as of January 31, 1926, and stated that was all he had. At the same time he delivered it to Mr. Etienne. In response to a question by the latter he stated there had been no considerable or substantial change in the financial condition of said corporation since the date of the statement. After examining the statement Mr. Etienne questioned the amount of the inventory. After that subject had been settled Mr. Etienne and Mr. Pinckard discussed the sales price. The statement showed total assets $304,132.74; it also showed

liabilities $109,364.71. Mr. Pinckard deducted the liabilities from the assets, divided the remainder by two and the dividend was ascertained to be $82,384.01. Thereupon he requested $80,000 as the sales price. After further discussion Mr. Etienne offered $25,000, which was accepted. The operating force at the Vulcan Iron Works was continued. Mr. Colmar returned to San Jose and Mr. Etienne at times visited the Vulcan Iron Works, at other times Mr. Kemp called on him, and the controlling management so continued down to the time this action was brought.

The record is full of conflicts. It discloses that the judgment appealed from is the result of the second trial. The first trial resulted in a judgment for the plaintiff. After the first trial was had bankruptcy proceedings were instituted against the Vulcan. During those proceedings two witnesses who had given material testimony during the first trial appeared in the bankruptcy court and gave testimony. On a motion for a new trial that testimony was brought to the attention of the trial judge and, basing his ruling thereon, it is admitted that he granted a new trial. On the second trial those conflicts going to the impeachment of the witnesses and a great deal of other evidence was introduced. The transcript contains over thirteen hundred pages. It will serve no useful purpose to attempt to analyze and state a complete *résumé* of the evidence.

In reply to the contention of the plaintiff that the findings are not sustained by the evidence the defendant quotes from *Southern Development Co.* v. *Silva,* 125 U. S. 247, 250 [8 Sup. Ct. 881, 31 L. Ed. 678], as follows: "In order to establish a charge of this character the complainant must show by clear and decisive proof—

"*First.* That the defendant has made a representation in regard to a material *fact;*

"*Secondly.* That such representation is false;

"*Thirdly.* That such representation was not actually believed by the defendant, on reasonable grounds, to be true;

"*Fourthly.* That it was made with intent that it should be acted on;

"*Fifthly.* That it was acted on by complainant to his damage; and

"*Sixthly.* That in so acting on it the complainant was ignorant of its falsity, and reasonably believed it to be

true." Having done so he then contends that if the evidence is sufficient to support the finding on any one of these six issues, the judgment must be affirmed. That contention is sound. (*White* v. *Hayward*, 33 Cal. App. 550, 553 [165 Pac. 972].) However, the trial court found with meticulous care on each one of said issues and found against the plaintiff on all of them. After a careful examination of the record we are not disposed to say that any single finding is not supported by the evidence.

The finding that is of the utmost importance to the parties is the one in which the court found that the representations of the defendant were not in any manner false, fraudulent or untrue. As stated above the statement delivered by Mr. Pinckard to Mr. Etienne purported to show the financial condition of the Vulcan Iron Works as of January 31, 1926, whereas the parties were making their contract in September, 1926. There is some evidence that the statement was not exactly correct as of January 31, 1926; however, it is equally clear that one auditor had reported to Mr. Pinckard those facts and figures which he believed to be true, and accepted and acted thereon. However, other accountants making subsequent examinations ascertained some errors in that statement. As we understand the plaintiff it is his assertion that the falsity rested in the statement of Mr. Pinckard that since the rendition of the statement on January 31, 1926, there had been no substantial change in the affairs of the Vulcan. Addressing ourselves specifically to that statement it will suffice to remark that the entire record does not disclose any falsity in that statement. Bearing in mind that the Vulcan was a property having gross assets of $304,132.74 and was being continuously operated after January 31, 1926, it is perfectly clear that any man engaged in the manufacturing business would know that many obligations for material and labor must have been incurred in the meantime. Both materials and labor were converted from raw material into manufactured or partly manufactured products. Although as contended by the plaintiff the amount of accounts payable, notes payable to banks, and accrued payroll account had increased $16,064.63, such fact standing alone does not show a false representation. The record does not disclose such a full and complete accounting as would show that the

affairs of the Vulcan were not substantially the same in September, 1926, as in January of that year. In other words, the record does not show that Mr. Pinckard's statement was not entirely correct.

As to the real party in interest, the trial court also found the facts against the plaintiff. He earnestly contends that the evidence of two of his witnesses was positive and directly in point showing the fact to be different from that found by the trial court. Conceding such to be the record it must likewise be considered that in other parts of the record there is clear and positive evidence of such facts that it may not be said, as a matter of law, that the trial court abused its discretion in rejecting the evidence of the two witnesses relied on by the plaintiff and basing its finding on the other evidence.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 19, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1935.