[L. A. No. 18962.   In Bank.   Aug. 22, 1944.]

ORVILLE H. COLLINS, Appellant, v. A. CAMINETTI, JR., as Insurance Commissioner, etc., Defendant; MAYNARD GARRISON, as Insurance Commissioner, etc. (Substituted Defendant), Respondent.

Sherman & Sherman and Chas. R. Thompson for Appellant.

Robert W. Kenny, Attorney General, and John L. Nourse, Deputy Attorney General, for Respondent.

EDMONDS, J.—In 1942, following a hearing upon an order to show cause issued by A. Caminetti, Jr., then the Insurance Commissioner of this state, the license of Orville H. Collins to act as an insurance agent was suspended for a period of six months. In a subsequent mandamus proceeding, the superior court rendered judgment for the commissioner and the question for decision upon the appeal of Collins from that determination concerns the sufficiency of the evidence, to justify the discipline imposed. By stipulation made at the time of the argument before this court, Maynard Garrison has been substituted for Caminetti, his predecessor in office, with the reservation that the present commissioner shall not be personally liable for any costs or damages which may be awarded to Collins.

For many years prior to 1942, Collins had been a life insurance agent licensed as such by the Department of Insur-

ance. At the time the order to show cause was issued, he was engaged in reinstating lapsed policies which had been written by Great States Life Insurance Co., then in the hands of the Insurance Commissioner as Conservator, and also soliciting business for Pacific National Life Assurance Co. By the order to show cause, the commissioner charged that Collins, contrary to the provisions of sections 780 and 781 of the Insurance Code, had made certain misrepresentations to policyholders of the Great States Company for the purpose of inducing them to discontinue their policies and insure with another company. As a further ground for discipline Collins was said to have misrepresented the terms and conditions of policies written by Great States and the affairs, condition and status of that company.

At the hearing upon the order to show cause, which was held by the Deputy Insurance Commissioner, a document examiner for the Department of Insurance presented testimony concerning the asserted misrepresentations made by Collins. In denial of the charges against him, Collins was a witness in his own behalf. Upon the trial of the mandamus proceeding, by stipulation the case was submitted upon the record of the hearing in the case against Collins which was held by the Department of Insurance and the depositions of two witnesses who testified against another agent. However, the record also shows that in addition to this evidence, the court heard one witness on behalf of Collins and three others who testified for the commissioner.

According to the deposition of Alvin G. Matlick, in 1941, Collins came to his home and discussed the insurance he had taken for himself and his ward in the Great States Company. At that time, said Matlick, Collins "made it plain . . . that the Great States was not what it should be at all"; that Matlick should "take another policy" for his ward. Also, Collins told him he "would get no more dividends for that policy at all and probably . . . would get nothing out of it any way." And, with respect to a policy insuring the life of Matlick, Collins said that, due to his health, he "would never get anything out of it any way." Asked if he could remember anything more said by Collins on the day in question, Matlick replied: "I was informed in a way that the Great States was no more good and [he would like] to help us out and get us reinstated in a new company that was good."

Upon these representations, Matlick declared, he signed an application on behalf of his ward for $1,000 insurance in the Pacific National, and allowed the two policies in the Great States to lapse. But later each policy was reinstated and at the time of the deposition they were still in effect.

The testimony of Victor Larson, another policyholder of Great States, shows that Collins called upon him about the same time as the visit to Matlick. Collins gave him the impression, said Larson, that he was representing both the Great States and the Pacific National, and that for him "to change over would be a more stable policy." "It would be better for me," Larson quoted Collins as saying, "to swing over into this company because . . . the Great States Life was about on the rocks." The witness added: "I just don't know how to put it, anyway being that the Great States was about done, if I switched to this policy I would be assured that nothing would happen in it that I don't lose my standing." As a result of this conversation Larson gave Collins an application for a $1,000 policy in the Pacific National and "wrote in for a settlement" on the Great States insurance.

Collins also called upon Dr. William I. Shultz, who in 1941 held several policies in Great States. This witness stated that Collins introduced himself as having been at one time connected with Great States. The doctor inquired about the financial status of the company and whether the policies he held were as good as they ever were. "I don't think he made any definite statement," said Dr. Shultz, "but it was his idea that probably this insurance company would be taken over by some other larger company and eventually be absorbed by that company. As far as saying that the insurance wasn't any good, I don't think Mr. Collins told me that. . . . However, after talking to Mr. Collins I felt as though probably the insurance wasn't as good as it could be." But he declared that the statements of Collins did not influence him to drop the policies, for, as he explained, he had lost interest in them before Collins called upon him.

At one time Collins and another agent visited Robert G. Franklin, who testified that "the gist of the conversation was . . . the advisability of transferring from the Great States to the Pacific National Assurance Company policy." At a later time Collins saw him alone for the purpose of obtaining

the reinstatement of the Great States policy which had then lapsed. The witness said that Collins advised him to do so in order to increase the surrender value of the insurance.

As a witness in his own behalf, Collins stated that he has been engaged in the insurance business for about twenty years. At no other time has any complaint been made concerning his practices. Commencing in 1937 he wrote insurance for the Great States Life Insurance Co. In August, 1940, the Insurance Commissioner was appointed the conservator of that company, and thereafter he was employed to reinstate policies which had lapsed.

In response to questions concerning his asserted representations to policyholders of Great States, he categorically denied the statements attributed to him by Victor Larson. And although he said that he called on the witness Matlick to sell insurance in the Pacific National, his testimony is in direct conflict with that of Matlick as to the conversation concerning the condition of Great States. According to Collins, "I spent about half an hour explaining to him that the Great States was all right." Collins also related at length the statements he had made to Matlick advising him to keep his insurance in Great States. "When I left there," Collins said, "Matlick was entirely satisfied with both companies and I am sure had no intention of letting either policy go." And Collins stated positively that in doing reinstatement work for Great States, which was then not writing any new business, although he was also representing Pacific National, he never attempted to have any policyholder lapse his insurance.

Upon this evidence the Insurance Commissioner suspended the license of Collins for a period of six months; in the trial of the mandamus proceeding the court determined that the findings of fact, conclusions and order made by the commissioner are supported by the evidence and rendered judgment accordingly. The court concluded from the evidence that Collins has violated sections 780 and 781 of the Insurance Code; that he "is untrustworthy in the conduct of his business and has, by the commission of wrongful acts in the course of his business, exposed those dealing with him to danger of loss." Also, said the court, Collins "has knowingly misrepresented the terms and effect of insurance policies while acting in the course of his business."

In support of his appeal, Collins asserts that the evidence

is insufficient to support the judgment against him. This is the sole issue, the attorney general concedes, but he points out that the court found the representations to be false, although misleading statements by Collins would be sufficient to justify the discipline imposed by the commissioner.

By section 783 of the Insurance Code, the Insurance Commissioner is authorized to suspend for not more than three years the license of an agent who has knowingly violated section 780 or section 781 of that code. Section 780 provides: "An insurer or officer or agent thereof, or an insurance broker or solicitor shall not cause or permit to be issued, circulated or used, any misrepresentation of the following: (a) The terms of a policy issued by the insurer or sought to be negotiated by the person making or permitting the misrepresentation. (b) The benefits or privileges promised thereunder. (c) The future dividends, payable thereunder." This section seems to be directed toward written statements, but if it applies to oral representations, then the statements of Collins may be considered in connection with subdivisions "b" and "c." The following section, 781, relates to what is known as "twisting." It reads: "A person shall not make any misrepresentation (a) to any other person for the purpose of inducing, or tending to induce, such other person either to take out a policy of insurance, or to refuse to accept a policy issued upon an application therefor and instead take out any policy in another insurer, or (b) to a policyholder in any insurer for the purpose of inducing or tending to induce him to lapse, forfeit or surrender his insurance therein." Implicit in these code sections is the requirement that an agent, charged with wrongdoing thereunder, must be shown to have intentionally made the misrepresentations prohibited by the Legislature. ▪ Applying to the statements of an insurance agent the rules applicable to charges of fraud and deceit, the Insurance Commissioner, in a proceeding to suspend the agent's license, must prove: (1) that the agent made a representation of one or more of the facts specified in section 780 or for one or more of the purposes specified in section 781 of the Insurance Code; (2) that such representation was false; (3) that such representation was known to the agent to be false or, if believed to be true, such belief was not based on reasonable or probable grounds, or

such false representation was made carelessly without any knowledge of the facts represented; (4) that it was made with the intent that it should be acted upon by an existing or prospective policyholder. (*Work* v. *Campbell*, 164 Cal. 343 [128 P. 943, 43 L.R.A.N.S. 581]; *Colmar* v. *Pinckard*, 3 Cal. App.2d 213 [39 P.2d 262]; *Wheat* v. *McNeill*, 111 Cal.App. 72 [295 P. 102]; *Andrew* v. *Bankers & Shippers Ins. Co.*, 101 Cal.App. 566 [281 P. 1091]; 37 C.J.S., Fraud, § 3, p. 215; 23 Am.Jur., Fraud and Deceit, § 20, p. 771; 12 Cal.Jur., Fraud and Deceit, § 12, p. 724.) ■ Proof of a misrepresentation specified in either section 780 or section 781 of the Insurance Code does not require a showing of reliance by the policyholder, his ignorance of the falsity of the representation, or damage to him as a consequence of such reliance.

The question for determination upon this appeal, therefore, is whether the record discloses any substantial evidence to support the finding of the superior court that Collins made misrepresentations of the kind stated in sections 780 and 781 of the Insurance Code (*Webster* v. *Board of Dental Examiners*, 17 Cal.2d 534, 539 [110 P.2d 992]). Although the appellant does not clearly specify the respects in which he considers the evidence insufficient to support the findings and conclusions of the trial court, it appears that he assails the judgment upon the ground that the commissioner did not produce substantial evidence tending to prove any representation to be false. Moreover, says the appellant, he may not be disciplined if his representations, even though false or misleading, were believed by him, on reasonable and probable grounds, to be true.

■ Reviewing the evidence in the light most favorable to the commissioner, the record shows that Collins, in a general way, informed at least two policyholders in Great States in regard to its assertedly precarious financial condition, advising them to lapse or surrender their policies and insure in Pacific National, as a safer company. But at that time, the Insurance Commissioner had taken over the Great States company upon a verified application to the superior court in which it was alleged that from his examination of the business and affairs of the corporation he found it "to be in such condition that its further transaction of business will be hazardous to its policy holders and to the public." In response to that application, the court appointed the commis-

sioner conservator of the company. Later, in a petition for approval of a rehabilitation and reinsurance agreement, filed in December, 1942, the commissioner alleged that the company was in the same financially hazardous condition shown by his examination made in 1940.

Testifying as to the condition of Great States, the Assistant Insurance Commissioner stated that, at the end of the year 1940, Great States had a deficiency of $12,168, and a total of but $72,789.70 of admitted assets in its life department, with only 1,215 policyholders. As of June 30, 1942, he continued, the life department of Great States, upon the basis of setting up as a liability, 100 per cent of the tabular reserves on the various policies outstanding, had a deficiency of $9,430.38 and, on the market value basis, the deficiency at that time, including certain contingent indebtedness, was $13,378.39. It was his opinion that the company could continue to operate safely for a "limited period of time," but that it would have to be reinsured to continue. From August 15, 1940, to November 30, 1942, the company lost over $800,000 of life insurance business, from a total of $1,950,000 on its books at the date the conservator was appointed.

Also, the record includes evidence of facts upon which Collins might reasonably have based a statement that Matlick "would get no more dividends" upon that policy. The company failed to pay a quarterly dividend in the first quarter of 1941, and although the Assistant Insurance Commissioner testified that the company was safe and sound as operated since it was taken over by the Insurance Department, his opinion was given with much qualification. It is safe, said that official, "provided it is still operated that way and without incurring losses incident to the executive department and the program of acquiring new business. That would be true for a limited period of time. However, the policy situation is perfectly safe for the reason, I believe, that it could be reinsured without modification of any sort at any time desired." But whether the company could be reinsured at that time, or at a later time, on terms which would assure to policyholders the full benefits accorded by their contracts was, at the time Collins made the statements complained of, a matter of conjecture.

Under these circumstances, the official statements of the

Insurance Commissioner show without doubt that, accepting the testimony of the witnesses concerning the representations said to have been made by Collins as true, he had reasonable grounds for believing that they were correct. Certainly those statements were no broader than the showing made by the Insurance Commissioner in his verified petition that Great States was in a hazardous condition. And although, as the attorney general contends, a company which is insolvent or unable to carry on its business in accordance with statutory requirements may be able to make a better reinsurance agreement if every one of its policyholders continues to pay premiums, an agent who repeats only the charges made by the commissioner against a company, or fairly states the financial condition of an insurer upon the basis of information reasonably believed by him to be true, does not violate the provisions of the Insurance Code.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Respondent's petition for a rehearing was denied September 18, 1944.