[Civ. No. 21793.   Second Dist., Div. One.   Mar. 20, 1957.]

LLOYD STEADMAN, Appellant, v. F. BRITTON McCON-
NELL, as Insurance Commissioner, etc., Respondent.

Paul Goodsell Sullins for Appellant.

Edmund G. Brown, Attorney General, and Lee B. Stanton, Deputy Attorney General, for Respondent.

DORAN, J.—On May 25, 1953, an accusation was filed with the Insurance Commissioner charging the appellant, Lloyd Steadman, a licensed life insurance agent, with misrepresentation, dishonest conduct, incompetency and untrustworthiness, in violation of the Insurance Code. To this Steadman filed a general denial and requested a hearing, but did not demur or otherwise object to the pleading. At the hearing both documentary and testimonial evidence was received and the matter submitted on receipt of written argument.

The Insurance Commissioner found the appellant guilty of making false and fraudulent representations for the purpose of inducing persons to take out policies of insurance; engaging in fraudulent acts and conducting business in a dishonest manner; incompetency and untrustworthiness in the conduct of business; commission of wrongful acts having subjected those dealing with appellant to danger of loss; and knowingly misrepresenting the terms and effect of insurance policies while acting in the course of business. Appellant's license was suspended for a period of one year.

A petition for reconsideration having been denied, Steadman filed this petition for writ of mandate which, after a hearing, was denied. The superior court found the Insurance Commissioner was not without jurisdiction, that Steadman received a fair trial, that the commissioner's decisions were supported by the findings and that the commissioner's findings are supported by substantial evidence; that there was no abuse of discretion by the commissioner, that Mr. and Mrs. Stokes to whom the insurance had been sold, had been damaged in excess of $300 per year since purchasing the insurance, and that Steadman did not come into court with clean hands.

The so-called "Bank Loan Life Insurance Plan," sold by appellant Steadman to Mr. and Mrs. Charles H. Stokes, as found by the trial court, operates essentially as follows: "The insured pays the first annual premium on a ten-payment life insurance policy. The policy is subsequently assigned as collateral for a bank loan, proceeds of which loan are applied to payment of the second annual premium. . . . On each anniversary date a new note is executed in the amount then out-

standing on the old note plus premium then due. Interest on each note is at the rate available when the note is executed. When the fifth annual premium becomes due, the bank pays the remaining premiums due in advance on a discounted basis and the insured executes a last note to cover said advance premiums and the balance outstanding on the then current note. To make this changeover, an agreement by the insurance company to receive such advance premiums on a discounted basis is necessary. Furthermore, if the insurance company would not agree to return upon request unused premiums so paid in advance, during the insured's lifetime, the policy would thereby be reduced in value as collateral for such loan.

"The bank loan is not intended to be paid in full until the end of the ten-payment period. However, each note is made due and payable at the next annual premium payment date. The borrower is personally liable on the note.

"The cash value of the policy is substantially less than the amount of the premiums and, consequently, of the note executed by the insured. In addition to interest payments on the note, the borrower must pay part or all of the difference between cash value and premiums or must provide additional collateral security to the bank or must have personal credit standing satisfactory to the bank, or any combination thereof.

"At the end of the ten-payment period, the insured may surrender the policy and receive cash value less the amount of the loan then outstanding. . . . Under the Bank Loan Plan, dividends may be left to accumulate at interest with the insurer and taken in cash at the time the policy is surrendered, or they be left to purchase paid-up insurance, or dividends may be applied to subsequent premiums payments and thereby reduce the amount of the bank loan required for premiums. If dividends are left to accumulate, they will increase the value of the policy as collateral for the loan.

"Interest on the bank loan is an expense which is deductible each year from the insured's gross income in calculating net taxable income. . . . This tax saving reduces the net cost of the bank loan. The amount of the tax saving increases or decreases as interest charges or the insured's tax bracket increase or decrease."

The trial court found that in 1948 Steadman sought to negotiate life insurance policies with Mr. and Mrs. Stokes who were stated to be seeking an investment of about $1,000 annually for the purpose of providing an educational fund.

Appellant Steadman explained some but not all of the features of the bank plan.

"Steadman represented that premiums of a $25,000.00 ten-payment life insurance policy . . . could be financed through such a bank loan plan by an initial payment of $2,544.00 and nine equal annual payments of $528.35; that Steadman represented that if such payments were made Mr. Stokes would receive between $15,000.00 and $20,000.00 in cash from the policies at the end of the ten-payment period"; that the Stokes were induced by such representations to take out two policies on the life of Mr. Stokes, "and were further induced to become personally liable on promissory notes . . . to the First National Bank of St. Joseph, Missouri."

It was further found "That said representations were false and misleading and untrue in that the total cash receivable or available from said policies . . . would be approximately $5,000.00 less than said minimum amount of $15,000.00," and that Steadman "knew or should have known that said statements and representations were false, untrue and misleading."

Steadman also represented that the annual payments for carrying the policies would be approximately $528.25 for each policy, but did not inform Mr. and Mrs. Stokes "that said payments would increase with an increase in interest rates, or otherwise. That said annual payments did increase almost $400.00 per annum; said increase occasioned hardship and difficulties to said Mr. and Mrs. Stokes in meeting the annual payment and has exposed them to serious danger of loss which might be occasioned by discontinuance or lapse of the policies due to the inability of the Stokeses to meet said annual payment."

Likewise, Steadman "did not inform them . . . that no agreement had been made with said New York Life Insurance Company or that no consent had been secured from said Company whereby if premiums were paid in advance said Insurance Company would return unused premiums upon request," and that at the times in question it was the policy of the company not to return advance premiums. It was also found that Steadman represented that death benefits would be payable upon the death of either Mr. or Mrs. Stokes, whereas, in fact, no benefits would be payable upon the death of Mrs. Stokes. The record discloses substantial evidence in support of these findings. As stated in a similar case,

*Collins* v. *Caminetti,* 24 Cal.2d 766, 772 [151 P.2d 105, 154 A.L.R. 1141], the evidence must be reviewed in the light most favorable to the commissioner.

■ Appellant's contentions that "The accusation fails to state grounds for revocation or suspension of petitioner's license," must be deemed specious and untenable. Perusal of the accusation as a whole leaves no doubt that the appellant is being charged with misrepresentation and fraud inducing Mr. and Mrs. Stokes to purchase policies of insurance, and conduct indicating "incompetency or untrustworthiness in the conduct of his business," etc. for which disciplinary action is authorized. Regardless of whether appellant may have waived such objection by failure to raise the same prior to this appeal, the accusation is clearly adequate.

As stated in the respondent's brief, "The statutory purpose (is) to ensure the honesty of insurance agents, brokers and salesmen." ■ The proceeding here involved is equitable in nature and the trial court was warranted in finding that petitioner, seeking a writ of mandate, did not come into court with clean hands. ■ In this connection it may be noted that the reviewing court is not here confronted with a criminal prosecution, a civil action for fraud and deceit, nor an action for breach of contract. Principles applicable to such actions are not necessarily involved in the present inquiry which relates solely to the question to whether disciplinary action should be taken in respect to appellant's conduct.

■ As said in *Collins* v. *Caminetti,* 24 Cal.2d 766, 772 [151 P.2d 105, 154 A.L.R. 1141], "Proof of a misrepresentation specified in either section 780 or 781 of the Insurance Code does not require a showing of reliance by the policyholder, his ignorance of the falsity of the representation, or damage to him as a consequence of such reliance." Again, appellant's argument that disciplinary action should not be taken for no more than "one or two disconnected acts in one case," suggestive of the common law "one bite" doctrine relating to dogs, is not persuasive and seems to entirely miss the nature of the proceedings and the protective purpose of the statute.

The meaning of such words as dishonesty, untrustworthiness, etc. as used in the statute, is well understood and should not be given a forced and unnatural interpretation. To adopt appellant's position in this regard would in effect emasculate the Insurance Code and give an insurance agent the utmost leeway in selling insurance without regard for ethical prin-

ciples. Obviously, this concept is far removed from the evident legislative intent.

In this connection it is well to note that the policy in question was one involving various complications, highly technical in nature. The appellant was an experienced expert in the field; the insured a mere layman who was led to believe that the bank plan would meet certain expressed objectives. Certainly the relationship was a fiduciary one in which Mr. and Mrs. Stokes were entitled to believe appellant's material statements. Had the Stokes been correctly informed as to the true situation, the insurance would not have been purchased.

Consideration of the entire record leads to the conclusion that the appellant was in all respects accorded full and fair hearings both before the Insurance Commissioner and again in the superior court; that no prejudicial error was committed, and that the findings, conclusions and judgment are fully supported by substantial evidence.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied April 9, 1957, and appellant's petition for a hearing by the Supreme Court was denied May 15, 1957.