**KENTUCKY CENTRAL LIFE
INSURANCE COMPANY,**
Plaintiff,

v.

**Thomas LeDUC, et al., Defendants.**

**No. C–92–2409 RFP.**

United States District Court,
N.D. California.

Oct. 28, 1992.

Robert D. Phillips, Jr., Richard A. Ergo, Jeffrey S. Salisbury, Bowles & Verna, Walnut Creek, CA, for plaintiff.

Jon L. Edwards, Franklin Brockway Gowdy, Brobeck, Phleger & Harrison, Philip A. McLeod, Robert A. Bleicher, Keesal, Young & Logan, San Francisco, CA, for defendants.

## ORDER

PECKHAM, District Judge.

## INTRODUCTION

Defendants Thomas LeDuc, Tom LeDuc Agency, Steven Tarnofsky, Steven Tarnofsky Insurance Services, Inc., Alan Sepanski, and Royal Brown bring this motion to dismiss all nine of the claims in plaintiff's complaint. The motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff Kentucky Central is a life insurance company. Defendants (except defendant Brown) were agents of Kentucky Central who solicited and sold life insurance policies for Kentucky Central until their contracts were terminated in August 1991. Defendant Brown is a life insurance agent authorized to sell life insurance on behalf of companies other than Kentucky Central, including The Mutual Group ("TMG").

Kentucky Central originally brought this action in state court in Sacramento against former Kentucky Central agents, including Tarnofsky and LeDuc, for their alleged participation in a campaign of misrepresentation regarding the financial condition of Kentucky Central. The campaign, claimed Kentucky Central, was designed to induce Kentucky Central policyholders to replace their policies with policies from other insurance companies. LeDuc and Tarnofsky then filed civil RICO actions against Kentucky Central in this court, alleging that Kentucky Central engaged in fraudulent investment practices, failed to disclose its financial instability, attempted to silence Kentucky Central agents and others from revealing these facts, and forced LeDuc and Tarnofsky to resign as a result of these improper activities. Kentucky Central then dismissed the state court action without prejudice and brought an action in this court under diversity jurisdiction asserting essentially the same claims as those pled in the previous state action. Kentucky Central brought its case to this court in order to have all three actions before a single judge, as the company claims that the agents' RICO actions are a defensive reaction to the state court litigation. This third action has been related to the two RICO suits.

Kentucky Central alleges that defendants have used the fact of Kentucky Central's rating reduction and setbacks in Kentucky Central's mortgage and real estate portfolio to make misleading and false allegations about Kentucky Central's financial condition. Kentucky Central claims that defendants have seized upon the downgrading and have attempted to create panic among policyholders by causing them to believe that Kentucky Central would be "the next Executive Life." Kentucky Central alleges that in the spring or summer of 1991, defendant LeDuc embarked upon a scheme to build an agency relationship with a different life insurance

company, TMG. LeDuc allegedly recruited agents of Kentucky Central and encouraged them to cancel or borrow against their Kentucky Central policies and replace them with policies issued by TMG and other insurance companies. According to Kentucky Central, the activities of defendants have caused the replacement of hundreds of policies by insureds who obtained their Kentucky Central policies through plaintiffs and other agents.

Specifically, Kentucky Central alleges: 1) defendants engaged in unlawful "twisting" in violation of Insurance Code section 781; 2) defendants engaged in intentional interference with Kentucky Central's prospective economic advantage with policyholders and agents; 3) defendants engaged in intentional interference with Kentucky Central's contractual relationships with policyholders and agents; 4) by committing its misrepresentations, defendants engaged in unfair competition in violation of Insurance Code section 790.03(a); 5) defendants (except Brown) have breached their contracts (agent and agency agreements) with Kentucky Central, entitling Kentucky Central to recovery of commissions under the contracts; 6) plaintiffs are entitled to a declaratory judgment declaring that Kentucky Central is entitled to terminate defendants' (except Brown's) rights to renewal commissions under the contracts; 7) defendants have committed unfair competition in violation of Business & Professions Code section 17203 and are thus entitled to restitution of profits, gains, and commissions obtained by defendants as a result of the unfair competition; 8) plaintiffs are also entitled to injunctive relief under section 17203 as a result of this unfair competition; and 9) defendant LeDuc committed defamation by publishing a letter in June 1992 containing false statements about Kentucky Central.

In their motion to dismiss, defendants allege that plaintiffs have failed to state a claim as to each of these allegations, as follows: 1) no private cause of action exists under Insurance Code section 781, and even so plaintiffs have not alleged a "knowing" violation of section 781; 2) & 3) the competition was privileged; 4) no private cause of action exists under Insurance Code section 790.03, and even so plaintiffs have not alleged a "knowing" violation of section 790.03; 5) the contractual provision at issue is void as against public policy; 6) plaintiff's request for declaratory relief is invalid as it does not allege a present or future controversy; 7) & 8) there is no private cause of action under section 781 or section 790.03(a), and therefore Business and Professions Code section 17203 is inapplicable; and 9) defendant LeDuc's statements were absolutely privileged under the judicial proceedings privilege or qualifiedly privileged under the matters of public interest or interested persons privilege.

## DISCUSSION

### A. Standard for Motion to Dismiss

In considering defendant's motion to dismiss under Rule 12(b)(6), this court must presume that the plaintiff's allegations are true and grant the motion only if it appears "beyond doubt" that the plaintiff can prove no set of facts entitling it to relief. *Sun Savings & Loan Assoc. v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987); *Federal Savings & Loan Ins. Corp. v. Musacchio,* 695 F.Supp. 1053, 1058 (N.D.Cal.1988). Motions to dismiss will therefore be viewed with disfavor under this liberal standard. *Intake Water Co. v. Yellowstone River Compact Comm.,* 590 F.Supp. 293 (D.Mont.1983), *aff'd,* 769 F.2d 568 (9th Cir.1984), *cert. denied,* 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1985). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. 2A J. Moore, *Moore's Federal Practice* ¶ 12,08, at 2271 (2d ed. 1982), *cited in Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984). To dismiss, "it must appear to be a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987).

### B. Insurance Code claims (claims 1 & 4)

1. Violation of Insurance Code section 781 (claim 1)

 a. *Private right of action?*

California Insurance Code section 781 prohibits "twisting" in the insurance business. Section 781 provides, in relevant part:

A person shall not make any misrepresentation ... (b) To a policyholder in any insurer for the purpose of inducing or tending to induce him to lapse, forfeit or surrender his insurance therein.

A person shall not make any representation or comparison of insurers or policies to an insured which is misleading, for the purpose or inducing or tending to induce him to lapse, forfeit, change or surrender his insurance, whether on a temporary or permanent plan.

Cal. Ins.Code § 781 (West's 1972).

The Insurance Code does not contain an express private right of action for violations of section 781. The Code does include a criminal penalty and an administrative procedure allowing the Insurance Commissioner to suspend an agent's license or an insurer's certificate of authority for violation of section 781. *See* Ins.Code §§ 782, 783, 783.5. Defendants therefore argue that plaintiffs may not assert a private right of action for violation of section 781.

Defendants rely on the absence of any express provision in the Code and on the California Supreme Court's decision in *Moradi–Shalal v. Fireman's Fund Ins. Co.*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (1988).[1] *Moradi–Shalal* held that *no* private civil cause of action exists under Insurance Code section *790.03(h)*, an entirely different section of the Insurance Code. The case overruled the Supreme Court's earlier decision in *Royal Globe Ins. Co. v. Sup.Ct.*, 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979), which held that a private litigant could bring an action to impose civil liability on an insurer for violating section 790.03(h). Section 790.03(h), enacted in 1971, prohibits engaging in unfair *claims* settlement practices, i.e. refusals on the part of insurers to *settle claims* or misrepresentations of terms of policies to *claimants*. Section (h) derives from the National Association of Insurance Commissioners' Model Unfair Claims Practices Act (hereinafter Model Act). These

types of actions are not at issue in Kentucky Central's complaint against its former agents. By contrast, Section 781, enacted in 1935, deals with the sale of insurance policies and prohibits misrepresentations of the terms of insurance policies for purposes of inducing policyholders to change policies.

Despite the different subject matters and purposes of these two sections, defendants contend that the rationale of *Moradi–Shalal* extends to bar private causes of action under section 781. The decision in *Moradi–Shalal*, however, turned on the history of the Model Act and on policy considerations unique to private actions under section 790.03(h). First, the court's review of the history of the Model Act demonstrated that the N.A.I.C. had not intended to create a private right of action for unfair claims settlement practices and that 17 of the 19 states that had faced the issue had refused to recognize a private right of action. *Moradi–Shalal*, 250 Cal. Rptr. at 121–24, 758 P.2d at 62–66. The court was also concerned that *Royal Globe* had promoted multiple litigation (an initial suit against the insured and then a second suit against the insurer for bad faith refusal to settle), escalated insurance costs, and created a conflict of interest for the insurer between protecting itself from the third-party claimant and protecting the interests of the insured. *Moradi–Shalal*, 250 Cal.Rptr. at 124–25, 758 P.2d at 66–67. Neither the history nor the policy considerations underlying section 790.03(h) apply to section 781. Allowing a private party to sue for misrepresentations would not promote multiple litigation, raise insurance costs, or create a conflict of interest.

■ Under The Restatement (2d) of Torts, section 874A, courts may imply a right of action from a statute if the plaintiff can show 1) that she was within the group of persons for whose benefit the legislation was adopted, and 2) that the interest invaded, the resulting harm, and the cause of the harm

---

1. Defendants also rely on Insurance Code section 1633.5 for the proposition that these regulations are intended to be the exclusive regulations concerning the conduct of the insurance business. Section 1633.5, however, appears in a completely different chapter of the Insurance Code (Chapter 5: Production Agencies) and applies, by its express terms, only to the regulations contained in that chapter. Defendants' use of this section in their discussion of section 781 is thus disingenuous.

were all within the purview of the legislative provision. Rest. (2d) Torts § 874A, comment i. According to the Restatement:

> When a legislative provision protects a class of persons by prescribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

*See, e.g., Middlesex Ins. Co. v. Mann,* 124 Cal.App.3d 558, 177 Cal.Rptr. 495, 502–503 (1981) (civil action in tort may lie for damages proximately resulting from an insurance company's breach of fiduciary duty imposed by the Insurance Code); *United Farm Workers of America, AFL–CIO v. Superior Court for the County of Kern,* 47 Cal.App.3d 334, 120 Cal.Rptr. 904 (1975) (allowing a private plaintiff to bring a cause of action for damages for violation of Labor Code provisions prohibiting misrepresentation in labeling and sale, despite the fact that the Labor Code provisions provided only criminal penalties). " 'Violation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute; any injured member of the public for whose benefit the statute was enacted may bring an action.' " *United Farm Workers,* 120 Cal.Rptr. at 910, *quoting Wetherton v. Growers Farm Labor Assn.,* 275 Cal. App.2d 168, 79 Cal.Rptr. 543, 546 (1969).

Neither the legislative history nor the case law under section 781 indicates whether the statute is designed to protect insurance companies such as Kentucky Central. Thus, we must rely on the language of the statute itself. Section 781 clearly protects policyholders from misleading statements by insurance companies and agents. By prohibiting those misrepresentations designed to induce policyholders to replace their policies with different carriers, section 781 also protects insurance companies from agents who commit fraudulent practices. The very language of the statute supports this interpretation.

The terms of the statute prohibit misrepresentation designed to induce policyholders to replace their policies with policies from other insurance carriers. Kentucky Central has alleged misrepresentation resulting in the replacement of hundreds of policies by insureds. Thus, the alleged harm is within the purview of the statute.

The court must then proceed to evaluate the factors laid out in the Restatement in order to determine whether it can imply a right of action. Rest. (2d) Torts § 874A, comment h. These considerations are: the nature of the legislative provision; the adequacy of existing remedies; whether a private right of action would aid or interfere with existing remedies and other means of enforcement; the significance of the purpose that the legislative body is seeking to effectuate, the extent of the change in tort law, and the burden that the new cause of action will place on the judicial machinery.

Here, the statutory language is not vague; it sufficiently notifies potential defendants of the conduct prohibited. Supplying a private cause of action will further the policy prohibiting misrepresentation. Because only the insurance commissioner may, under the statute, institute proceedings for violation of this section, the remedies are inadequate. Furthermore, a private right of action would not interfere with administrative remedies, as the statute does not give private parties the right to institute administrative proceedings and the insurance commissioner's resources do not allow him to prosecute every violation of this statute. The legislative purpose— deterring misrepresentations in the insurance business—is significant. The cause of action under section 781, far from creating new law, would essentially amount to common law misrepresentation.

#### b. *"Knowing" violation*

■ Defendants further argue that the first claim should be dismissed because plaintiff Kentucky Central has failed to allege that defendants *knew* that the representations concerning Kentucky Central's financial condition were, in fact, false, or that they made such false representations carelessly without any knowledge of the facts represented.

Defendants rely primarily on *Collins v. Caminetti*, 24 Cal.2d 766, 151 P.2d 105 (1944), in arguing that plaintiffs must specifically allege a knowing violation of section 781. That case dealt with an insurance agent's challenge to the suspension of his license under Insurance Code section 783. The *Collins* court held that to suspend an agent's license, the insurance commissioner must prove, among other things, that the agent knew the statement was false or that his belief that it was true was not based on reasonable or probable grounds, or that the false representation was made carelessly without any knowledge of the facts represented. *Collins*, 24 Cal.2d at 771–72, 151 P.2d 105.

Plaintiffs have alleged that defendants "have successfully caused hundreds of policies to lapse and be replaced, and have done so at least in part by making unfair presentations, *intentional or negligent misrepresentations*, misleading statements, concealments and omissions of fact to policyholders of Kentucky Central." Complaint, para. 28 (emphasis added). Plaintiffs have not, however, alleged misrepresentation with particularity as required under Federal Rule of Civil Procedure 9(b). In particular, plaintiff has failed to allege that defendants made the alleged misrepresentations with the scienter required under *Collins v. Caminetti*. Plaintiff will thus be given leave to amend the complaint to allege the elements of misrepresentation with particularity, in accordance with Rule 9(b) and *Collins v. Caminetti*.

2. Insurance Code section 790.03(a) (claim 4)

 a. *Private right of action?*

■ California Insurance Code section 790.03 prohibits "unfair methods of competition and unfair and deceptive practices in the business of insurance." Among the prohibited methods of competition are those proscribed by section 790.03(a):

(a) Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement

*misrepresenting* the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon, or making any *false or misleading* statement as to the dividends or share of surplus previously paid on similar policies, or making any *misleading representation or any misrepresentation* as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies *misrepresenting* the true nature thereof, or making any *misrepresentation* to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his or her insurance.

Cal.Ins.Code § 790.03(a) (West's Supp.1992) (emphasis added). The Insurance Commissioner may institute proceedings and obtain civil penalties against violators of this section. Cal.Ins.Code §§ 790.035, 790.04, 790.-05, 790.06, 790.07 (West's 1972 & Supp.1992).

Defendants argue that Insurance Code section 790.03(a) does not contain an express private right of action and that the rationale of *Moradi–Shalal* should bar plaintiff's private civil cause of action under this section.

Again, the defendants' attempt to invoke *Moradi–Shalal* in the context of a different section of the Insurance Code fails. Section 790.03(a)–(g) was enacted in 1959, while section 790.03(h), at issue in *Moradi–Shalal*, was enacted in 1971 and has a completely different history and purpose. Section 790.-03(a) prohibits misrepresenting policies, financial conditions of insurers, dividends, etc. It has nothing in common with the unfair claims settlement practices prohibited in section 790.03(h), except that they are both prohibited business practices regulated by article 6.5 of the Insurance Code ("Unfair Practices").

The legislative history and case law are silent as to whether a private cause of action exists under section 790.03(a).[2] Again, we

2. In *American Int'l Group v. Superior Court*, 234 Cal.App.3d 749, 285 Cal.Rptr. 765 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1944, 118

L.Ed.2d 549 (1992), the court mentioned in dicta that section 790.03(a) does not provide for a private right of action. The court relied, howev-

must look to the Restatement test to determine whether a private cause of action may be implied from section 790.03(a). *See* Rest. (2d) Torts § 874A, *supra.* Clearly the harm alleged in Kentucky Central's complaint (misrepresentation) is within the purview of section 790.03(a). Kentucky Central appears to fall within the class of persons protected by section 790.03(a). Unfair competition and unfair and deceptive business practices statutes such as section 790.03(a) are designed to protect competitors as well as members of the public who are likely to be deceived. *See Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 10 Cal.Rptr.2d 538, 544, 833 P.2d 545, 551 (1992). Furthermore, the factors noted in comment h to the Restatement apply equally here and support finding a private right of action under section 790.03(a) under the same analysis as was described *supra* in connection with section 781. The legislative purpose of section 790.03(a)—deterring unfair competition—is an important one, and supplying a private right of action will further this purpose. A private right of action under section 790.03(a) would not create new law, but would essentially amount to a cause of action for common law misrepresentation or unfair competition.

Furthermore, although neither party referred to it in their briefs, Insurance Code section 790.09 contains a savings clause permitting private civil suits in addition to administrative enforcement actions. Section 790.09 states, in pertinent part:

> No order to cease and desist issued under this article directed to any person or subsequent administrative or judicial proceeding to enforce the same shall in any way relieve or absolve such person from any ... civil liability ... under the laws of this State arising out of the methods, acts or practices found unfair or deceptive.

Cal.Ins.Code § 790.09 (West's 1972). "Section 790.09 thus contemplates a private suit to impose civil liability irrespective of governmental action against the insurer for violation of a provision of the Insurance Code." *Greenberg v. Equitable Life Assurance Society of U.S.,* 34 Cal.App.3d 994, 1001, 110

Cal.Rptr. 470, 475 (1973). *Greenberg* allowed a private cause of action by a consumer against an insurance company for violation of section 790.03(c), but the court extended its interpretation of section 790.09 more broadly to the entire range of provisions of section 790. *See also Shernoff v. Superior Ct. of Los Angeles County.,* 44 Cal.App.3d 406, 409, 118 Cal.Rptr. 680, 682 (1975) (following *Greenberg* ).

#### b. *"Knowing" violation*

Defendants claim that section 790.03(a) requires plaintiff to allege that defendants knew that the alleged statements were false or lacked reasonable grounds for believing that they were true, and that plaintiff has failed to so allege.

■ Section 790.03(a) does not, by its terms, require plaintiff to allege that defendants knew or should have known that the statements were false. It does, however, require plaintiff to allege that defendants made misrepresentations or false or misleading statements regarding the terms of insurance policies, dividends, financial condition of insurers, etc. *See* underlined portions of section 790.03(a), *supra.* Thus, a cause of action under section 790.03(a) requires plaintiff to essentially allege the elements of common law misrepresentation.

Plaintiff has alleged that defendants made misrepresentations. Complaint, para. 28. Plaintiff also alleged that this conduct included *willful* violations of section 790.03(a). Plaintiff has not, however, alleged misrepresentation with the particularity required in Federal Rule of Civil Procedure 9(b). Among other things, plaintiff has failed to allege that defendants made the alleged misrepresentations with knowledge of their falsity. Plaintiff will thus be given leave to amend the complaint to allege the elements of misrepresentation with particularity.

#### C. *Business Tort claims* (claims 2 & 3)

Plaintiff alleges that defendants' acts of misrepresentation and other intentional and wrongful acts of interference with Kentucky

er, on *Moradi–Shalal* for this statement. As noted previously, *Moradi–Shalal* does not bar pri-

vate rights of action under section 790.03(a). Thus, the court's statement was misplaced.

Central's contractual and economic relations with policyholders and agents give rise to actions for intentional interference with prospective economic advantage and intentional interference with contractual relations. Defendants contend that these claims should be dismissed because their actions constituted privileged competition. Defendants argue that Kentucky Central does not allege that defendants *knew or should have known* that their statements were false.

■ A complaint is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense must appear on the face of the pleading. 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1357, at 348 (1990).

■ To state a valid cause of action for these interference torts, plaintiff must allege that the defendants' interference was wrongful—either by alleging that it was not privileged or by alleging facts taking defendants' actions out of the realm of legitimate business transactions. 5 B. Witkin, *Summary of California Law* (Torts) § 653 (1987) (hereinafter Witkin's). The focus is on the defendants' motive or purpose and the means by which it is accomplished. *Id.*

■ Plaintiffs have alleged misrepresentation and other wrongful actions in violation of Insurance Code sections 781 and 790.-03(a) and of Business and Professions Code section 17200 (see below). Thus, accepting these allegations as true for the purposes of this motion, the defense of privilege does not appear on the face of the complaint. Defendants' reliance on *Collins v. Caminetti*, 24 Cal.2d 766, 151 P.2d 105 (1944), is misplaced. *Collins* dealt with Insurance Code section 783, not interference torts. Defendants also rely on *Charles C. Chapman Building Co. v. California Mart*, 2 Cal.App.3d 846, 82 Cal. Rptr. 830 (1969). *Chapman*, however, involved defendants who solicited tenants of plaintiff's building and entered into leases with them solely to further economic interests as competitors, making *no false statements or misrepresentations*. *Chapman* is thus inapplicable to the facts as presented in Kentucky Central's complaint.

Moreover, defendants may be unable to claim the defense of privileged competition, since defendants were not competitors of Kentucky Central at the time of their alleged wrongdoing, but were agents of the company. *See Lowell v. Mother's Cake & Cookie Co.*, 79 Cal.App.3d 13, 144 Cal.Rptr. 664, 670 (1978) (delivery company and bakery were not competitors so no privilege was allowed).

Finally, the determination whether the interference is privileged involves consideration of numerous factual matters. *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App.3d 200, 194 Cal.Rptr. 180, 199 (1983). Consideration is given to the following factors: a) the nature of the actor's conduct, b) the actor's motive, c) the interests of the other with which the actor's conduct interferes, d) the interests sought to be advanced by the actor, e) the social interests in protecting the freedom of action of the actor and the contractual interests of the others, f) the proximity or remoteness of the actor's conduct to the interference and g) the relations between the parties. Rest. (2d) Torts § 767. Because the question is essentially whether the actor's conduct was fair and reasonable under the circumstances, this is peculiarly a question for the trier of fact. *Rosenfeld*, 194 Cal.Rptr. at 199.

D. *Breach of Contract* (claim 5)

Plaintiff alleges that defendants (except Brown) breached their contractual obligations to return one-half of the first year commissions received by them for all Kentucky Central policies which they either directly or indirectly caused to be replaced within two years of the date of issue of the Kentucky Central policies. Defendants assert that they had a legal duty to make the disclosures which allegedly caused policyholders to change carriers and that a party cannot be held liable for breach of contract for failing to disregard a legal duty. Thus, they contend that the contract is void as against public policy.

■ California law does not clearly define such a legal duty. In procuring a policy, the broker must exercise good faith and reasonable skill and diligence in selecting

the policy, obtaining the best terms possible, and ensuring that the policy covers the property in question. 2 Witkin's (Agency) § 288. However, in *Wilson v. All Serv. Ins. Corp.*, 91 Cal.App.3d 793, 153 Cal.Rptr. 121, 124 (1979), a policyholder sued his insurance broker after the insurer with whom the broker had placed his coverage became insolvent and could not cover his claim. The court held that the broker had no duty to his client to investigate the financial condition of an insurer before placing insurance with it on the client's behalf. The broker fulfills his duty by placing insurance with an insurer conducting business pursuant to a certificate of authority from the Insurance Commissioner, whose duty it is to oversee the financial condition of an insurer. Defendants urge the court to give less weight to *Wilson* in today's uncertain environment in the insurance industry.

Even were we to find that such a legal duty exists, however, other remaining questions preclude granting a motion to dismiss on this claim. To grant the motion to dismiss, we would need to find that the duty was fulfilled or that the statements did not go beyond the scope of the duty. These are questions of fact on which parties have presented no evidence and which cannot be resolved on a motion to dismiss.

E. *Declaratory Judgment regarding Renewal Commissions* (claim 6)

■ Under the agents' contracts with Kentucky Central, the agents were entitled to payments of renewal commissions to arising out of the agents' sale and maintenance of Kentucky Central policies. Plaintiffs contend that, under the agents' contracts with Kentucky Central (standard paragraph 9(g)), agents' rights to renewal commissions were predicated on their agreement to refrain from inducing Kentucky Central policyholders to cancel or lapse their policies and their related agreement to refrain from inducing Kentucky Central agents, general agents, and regional general agents from severing or altering their relationships with Kentucky Central. Complaint, paras. 13–15. Kentucky Central maintains that a controversy has arisen between the company and the agents regarding defendants' rights to renewal commissions. Thus, Kentucky Central requests a declaratory judgment declaring that the agents' rights, if any, to future renewal commissions arising out of their prior sale and continued maintenance of Kentucky Central policies are terminated.

Defendants argue that the controversy is not a proper subject for a declaratory judgment because it does not allege a present or future controversy, but only one regarding past acts. "There is no basis for declaratory relief where only past wrongs are involved. Hence, where there is an accrued cause of action for an actual breach of contract ... declaratory relief may be denied." 5 B. Witkin, *California Procedure* (Pleading) § 817 (3d ed. 1985).

In so arguing, however, defendants seem to confuse the issue of recovering renewal commissions already paid to agents (claim 5) and this claim (claim 6) for a declaration of Kentucky Central's obligation to pay renewal commissions *in the future*. To argue that there is no future controversy here would be to concede that the agents are not entitled to future renewal commissions. Defendants do not indicate that they are prepared to do so. At issue, moreover, is whether the contracts, which were terminated during late 1991, continue to govern the agents' rights to renewal commissions. This issue is one of fact and should not be decided on a motion to dismiss.

F. *Business and Professions Code* (claims 7 & 8)

■ Plaintiff alleges that defendants' conduct constitutes acts of unfair competition in violation of California Business and Professions Code section 17200. Unfair competition under section 17200 is defined to include "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal.Bus. & Prof.Code § 17200.

California courts have consistently interpreted such language broadly. *People v. McKale*, 25 Cal.3d 626, 159 Cal.Rptr. 811, 813, 602 P.2d 731, 733 (1979). An "unlawful business activity" includes "anything that can properly be called a business practice and that at the same time is forbidden by law."

*McKale,* 159 Cal.Rptr. at 813, 602 P.2d at 733; *Barquis v. Merchants Collection Ass'n of Oakland,* 7 Cal.3d 94, 101 Cal.Rptr. 745, 758, 496 P.2d 817, 830 (1972) (discussing Civil Code § 3369, which later became Bus. & Prof.Code § 17200). "The Legislature ... intended by this sweeping language to permit tribunals to enjoin ongoing wrongful business conduct in whatever context such activity might occur." *McKale,* 159 Cal.Rptr. at 814, 602 P.2d at 734; *Barquis,* 101 Cal. Rptr. at 757, 496 P.2d at 829.

Business and Professions Code sections 17203 and 17204 specifically authorize private remedies for unfair competition, allowing private parties to enjoin acts of unfair competition or obtain restitution of money or property which has been acquired by unfair competition.

Defendants argue that there is no private right of action under section 17203 because none exists under the Insurance Code provisions discussed above (sections 781 and 790.-03(a)). Defendants rely on *Industrial Indemnity Co. v. Superior Ct.,* 209 Cal.App.3d 1093, 257 Cal.Rptr. 655 (1989) (denying damages claims under Bus. & Prof.Code section 17203, noting that there is no private right of action under Insurance Code section 790.-03(h)). As discussed above, this court finds that the Insurance Code provisions at issue in *this case* (sections 781 and 790.03(a)) provide a private cause of action.

Moreover, *Industrial Indemnity* dealt with the prohibition of *damages* claims under section 17203 rather than with the existence or non-existence of a private cause of action; the fact that no private cause of action existed under section 790.03(h) merely strengthened the argument against allowing damages in that case. Here, plaintiff requests injunctive relief and restitution, not damages. Thus, the claims do not run afoul of the case law prohibiting claims for damages under section 17203. *See Industrial Indemnity,* 257 Cal.Rptr. 655; *Bank of the West v. Superior Ct.,* 2 Cal. 4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992).

In addition, Business and Professions Code section 17200 provides an independent cause of action which is cumulative to remedies available under other state laws. Cal.Bus. & Prof.Code § 17205 (West's 1987). For example, in a related context, plaintiffs used section 17203 to enjoin an automobile dealer and financing company from violating the Rees-Levering Automobile Sales Finance Act (Civil Code §§ 2981–2990). *See Hernandez v. Atlantic Finance Co.,* 105 Cal.App.3d 65, 164 Cal.Rptr. 279 (1980).

### G. *Defamation* (claim 9)

Plaintiff alleges that defendant LeDuc's letter of June 1992 to other agents of Kentucky Central defamed Kentucky Central. Defendant contends that the letter is absolutely privileged (under the judicial proceedings privilege of Cal.Civ.Code § 47(b)(2)) or qualifiedly privileged (under the interested persons privilege of Cal.Civ.Code § 47(c) or matter of public concern privilege).

Again, as discussed above, the affirmative defense must appear on the face of the complaint in order to dismiss the claim.

#### 1. Judicial Proceedings privilege

 Absolute privilege in judicial proceedings is afforded only if the following conditions have been met: the publication 1) was made in a judicial proceeding, 2) had some connection or logical relation to the action, 3) was made to achieve the objects of the litigation, and 4) involved litigants or other participants authorized by law. *Rosenfeld, Meyer & Susman v. Cohen,* 146 Cal. App.3d 200, 194 Cal.Rptr. 180, 200 (1983). *See also Silberg v. Anderson,* 50 Cal.3d 205, 266 Cal.Rptr. 638, 642, 786 P.2d 365 (1990). Special emphasis is placed on the requirement that the defamatory publication be made in furtherance of the litigation. *Rosenfeld,* 194 Cal.Rptr. at 201.

Defendants contend that *Cayley v. Nunn,* 190 Cal.App.3d 300, 235 Cal.Rptr. 385 (1987) applies to this case. In *Cayley,* defendants were marshalling evidence and preparing for their presentation at a privileged proceeding when they made their defamatory statements. Therefore, the statements were directed toward the achievement of the objects of the proceeding and were privileged. 235 Cal.Rptr. at 389.

A review of the LeDuc letter itself establishes that the references to LeDuc's lawsuit against Kentucky Central constituted only two paragraphs of the three page, single spaced letter. The letter also discussed Kentucky Central's ratings decline, other alleged financial problems, and other lawsuits against Kentucky Central. It did not ask for evidence for LeDuc's suit, but appeared only to inform the agents of the alleged decline of Kentucky Central. Thus, *Cayley* is inapposite.

The privilege does not appear on the face of the complaint, but is rather a factual issue which should not be disposed of on a motion to dismiss.

2. Interested Persons and Matter of Public Concern privileges

 California Civil Code § 47(c) provides that a privileged publication is one made:

> In a communication, without malice to a person interested therein, 1) by one who is also interested, or 2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or 3) who was requested by the person interested to give the information.

Cal.Civ.Code § 47(c) (West's Supp.1992). Speech within the public interest is also subject to a qualified privilege. *Everett v. California Teachers Assn.*, 208 Cal.App.2d 291, 25 Cal.Rptr. 120 (1962). Plaintiff must plead malice where an action concerns a matter of public interest. *Everett*, 25 Cal.Rptr. at 122.

Defendants argue that plaintiff has failed to plead malice in its complaint and that the statements in the LeDuc letter are statements falling within the interested persons or matter of public interest privileges. Assuming for purposes of this motion that the statements could fall within the interested persons or matter of public interest privileges, the real issue is whether plaintiffs have adequately alleged malice (knowledge of falsity or reckless disregard of falsity).

The only direct reference to "malice" in the complaint is found in reference to plaintiff's claims for punitive damages. Thus, plaintiff alleges in several paragraphs that the conduct of the defendant was "fraudulent, oppressive, and malicious." Complaint, paras. 38, 44, 72. Malice in the punitive damages claim is thus used in a different context than it is used in a defamation claim. However, Kentucky Central does allege that the defendant has engaged in "intentional or negligent misrepresentations, derogatory, unfair, false, and misleading statements regarding Kentucky Central." Complaint, para. 18. Thus, by alleging intentional misrepresentations, plaintiff indirectly alleges malice. As the reference does not appear clearly, plaintiffs will be given leave to amend the complaint to clearly state allegations of malice.

## CONCLUSION

Defendants' motion to dismiss plaintiff's second (intentional interference with prospective economic relations), third (intentional interference with contractual relations), fifth (breach of contract), sixth (declaratory judgment re renewal commissions), seventh (Bus. & Prof.Code § 17200), and eighth (Bus. & Prof.Code § 17200) claims is hereby DENIED. As for the first and fourth claims (Ins.Code §§ 781 & 790.03(a)), plaintiff is hereby given leave to amend the complaint to allege misrepresentation with particularity as required by Federal Rule of Civil Procedure 9(b). As for the ninth claim (defamation), plaintiff is hereby given leave to amend the complaint to more clearly allege that defendant LeDuc acted with malice in publishing the alleged defamatory letter.

IT IS SO ORDERED.