[Civ. No. 18041. First Dist., Div. One. Aug. 12, 1958.]

MERRITT HARDMAN FOSTER, Appellant, v. F. BRITTON McCONNELL, as Insurance Commissioner, etc., et al., Respondents.

Allan L. Sapiro and Arthur N. Ziegler for Appellant.

Edmund G. Brown, Attorney General, and Harold B. Haas, Deputy Attorney General, for Respondents.

BRAY, J.—Appellant's petition to the superior court for a writ of mandate to compel respondent Insurance Commissioner to restore his restricted insurance licenses was denied. He appeals.

### QUESTIONS PRESENTED

1. Was appellant entitled to a trial de novo in the trial court?

2. Is there substantial evidence to support the findings of the commissioner?

3. Did the commissioner have jurisdiction to discipline appellant for misrepresentations made at Fort Ord, a government reservation?

4. Was there a violation of the United States Constitution or the California Constitution?

### RECORD

Appellant had been licensed as a fire and casualty agent, life and disability agent, and fire and casualty broker. For violations of the Insurance Code all licenses were suspended

for two months (from December 14, 1951, to February 13, 1952). At the end of the suspension period and pursuant to section 1690, Insurance Code, the Department of Insurance issued appellant restricted agent's licenses only. On April 24, 1952, an accusation was filed against appellant charging (1) that during the suspensory period appellant transacted more than 100 policies of insurance with Western Pioneer Insurance Company without a license so to do and (2) that on certain dates at Fort Ord military reservation appellant knowingly made untrue representations specifically set out in the accusation to three named soldiers respectively to induce each to purchase a life insurance policy from appellant. The hearing officer found all charges to be true and recommended the revoking of appellant's licenses. The commissioner thereafter adopted the findings and decision of the hearing officer and revoked the licenses. The trial court, upon the hearing of the petition for writ of mandate, found ''That substantial evidence in the light of the full record supports the findings of respondent complained of . . . ; that said findings afforded ample support to the order of the said respondent, and said order was properly issued . . .'' and denied the petition for writ of mandate.

1. *Trial De Novo.*

█ Appellant contends that *Nardoni* v. *McConnell* (1957), 48 Cal.2d 500 [310 P.2d 644], required the court to reweigh the evidence and exercise its independent judgment in the proceedings on the writ rather than do, as the court did, merely determine if the commissioner's findings were supported by the evidence. (See also 2 Cal.Jur.2d 384-385.) In the Nardoni case and in the ones referred to in the above reference to 2 California Jurisprudence 2d, the courts were dealing only with proceedings brought to suspend or revoke licenses. It has been held that such rule applies *only* to such proceedings. (*McDonough* v. *Goodcell* (1939), 13 Cal.2d 741, 753 [91 P.2d 1035, 123 A.L.R. 1205] ; *McDonough* v. *Garrison* (1945), 68 Cal.App.2d 318, 336 [156 P.2d 983].) It does not apply where an application for a license is denied by the commissioner (*McDonough* v. *Garrison, supra,* 68 Cal.App.2d 318), nor where the licensee is seeking the restoration of a revoked license. (*Housman* v. *Board of Medical Examiners* (1948), 84 Cal.App.2d 308, 312 [190 P.2d 653, 192 P.2d 45].)

█ In those cases the scope of review is to determine whether the administrative agency abused its discretion which means

that the court's power is limited to determining the sufficiency of the evidence to support the administrative findings. (*McDonough* v. *Garrison, supra,* 68 Cal.App.2d at p. 337.) ■ There are two provisions in the Insurance Code which seem to indicate that the Legislature intended such discretion as alluded to above to repose in the commissioner in dealing with restricted licenses. Section 1690, Insurance Code, provides that the commissioner *may* issue a restricted license where, as here, he finds that a licensee has been found to have violated any provision of the code which would justify the suspension or revocation of his license. Section 1690.3 provides that a restricted license "does not confer any property right in the privileges to be exercised thereunder, and the holder of a restricted license does not have the right to renewal of such license . . . The commissioner may, with or without hearing, revoke a restricted license whether the holder has violated any provision of this code or restriction or condition of the license or not." Thus, the granting of a restrictive license and its revocation is entirely within the discretion of the commissioner. Hence, when he has revoked such a license the only inquiry the court may make is whether he has abused his discretion and such an inquiry does not require a trial de novo. It calls only for a determination of whether there is substantial evidence to support the commissioner's determination.

### 2. *The Evidence.*

■ The evidence as to the transaction with the Western Pioneer Insurance Company follows: Upon his suspension appellant was informed that he could exercise no rights or privileges under his licenses. He was also instructed in writing that he was permitted to handle only renewals and reinstatements of policies which were entirely issued prior to his suspension and of which he was the producer of record; also there could be no gap in coverage. During the period of his suspension appellant was informed by the general manager of Pioneer Underwriters that they were cancelling as of now all of his substandard automobile insurance risks. Appellant went to the Western Pioneer Insurance Company, bringing with him all of his records and correspondence, dealing with over 100 policies. He told Voss, the manager, of his suspension and asked him to find out from the Department of Insurance whether the company could accept the cancelled

business. Voss called the commissioner's office. He assumed that the person whom he was calling was familiar with appellant's case and would know that appellant was not licensed as an agent for Western. Voss was told that the company could accept the business but could not pay appellant a commission. Voss then sent a regular form of appointment of appellant as an agent for Western to the department. It was approved and returned. Appellant admitted that during the suspension period he wrote two new Western policies, also some 15 or 20 of the policies he turned over to Western were policies which had expired on other companies during the suspension period; also there was a group of 28 policies which were new policies for which applications had been sent to other companies prior to his suspension, rejected by them, returned to appellant, and accepted by Western during the suspension. Appellant had no contact with the department during this period. He thought that the appointment obtained for him by Western was all he needed. He had Western communicate with the department because he felt that the company had "cleaner hands" than he. The letter of instructions given him by the department at the time of suspension recommended that he get another broker. He approached two or three but they did not want to become involved with a man under suspension. He does not claim that his acts were not in violation but that the appointment sent him by the commissioner on Western's application amounts in effect to an estoppel. He relies on *Snyder* v. *Redding Motors* (1955), 131 Cal. App.2d 416 [280 P.2d 811], which, however, is not in point. There an insurance company was held liable for a judgment and costs of defense suffered by an automobile owner who had applied to the company for automobile insurance and the company neither rejected the application nor issued the insurance. Obviously there is no resemblance between the facts of that case and ours. Voss in communicating with the department did not make a full disclosure of the situation, as he was only interested in determining whether appellant would be entitled to commissions. He did not state that appellant was turning over new business although he knew that "renewal" (which was all appellant was entitled to turn over) did not apply to new policies. Appellant read all of the documents pertaining to his suspension. The evidence supports the conclusion that he knew that even with the appointment he could not negotiate new business. The finding against him on this branch of the case is well supported.

■ As to the alleged misrepresentations we see no reason to completely detail the evidence for the reason that the testimony of the soldiers amply supports a finding that appellant misrepresented the policies that he sold them, that he did so knowing the representations to be untrue and that he made them for the purpose of selling the policies. Appellant denied making the statements which the soldiers claimed he made. This, of course, merely constituted a conflict which the hearing officer and the commissioner had the duty to resolve and which they resolved against appellant. Additionally, appellant contends that he cannot be held liable for any misrepresentations because he relied upon and used a demonstrator sheet and material supplied by the insurance company, citing *Graham* v. *Ellmore* (1933), 135 Cal.App. 129 [26 P.2d 969] to support his contention. He also contends that certain statements on the company's literature to the effect that the figures showing returns on the policies, etc., are merely illustrative and not guarantees, coupled with the ruling in *Podlasky* v. *Price* (1948), 87 Cal.App.2d 151, 160 [196 P.2d 608], to the effect that a disclaimer of responsibility for errors and omissions contained at the bottom of a prospectus would ''excuse an innocent misrepresentation or misstatement of fact'' precluded any finding of misrepresentation by him. However, the evidence shows that appellant represented the policies (1) to be a savings plan, (2) that the insured could withdraw sums from the policy at any time after the payments were received by the company, and (3) that on cancellation the insured could recover all sums paid, and as to one of the insured accumulated interest would be paid. Thus appellant was doing more than presenting the insurance company's representations. As to the statement at the bottom of the demonstrator sheet, the case cited by appellant, *Podlasky* v. *Price, supra,* 87 Cal.App. 2d 151, 160, states that such a statement ''would not justify a false representation knowingly made.'' Moreover, it is the fact of misrepresentation that is important here, and not whether the applicant for insurance relied upon such representation. (*Collins* v. *Caminetti* (1944), 24 Cal.2d 766, 772 [151 P.2d 105, 154 A.L.R. 1141].)

■ Appellant's contention that the accusations and misrepresentations must be proved beyond a reasonable doubt is unfounded. Administrative proceedings for the revocation of a license are not quasi-criminal and are not governed by rules of criminal evidence or procedure. (*Webster* v. *Board*

*of Dental Examiners* (1941), 17 Cal.2d 534, 537-539 [110 P.2d 992] ; *Marlo* v. *State Board of Medical Examiners* (1952), 112 Cal.App.2d 276, 282 [246 P.2d 69].)

### 3. *Fort Ord.*

Appellant's misrepresentations were all made at Fort Ord. He had a permit from the post commander to sell insurance there. It had not been revoked. The Army has regulations as to the procedure and policy to be followed in soliciting commercial life insurance on any installations. Appellant contends that in the cession to the United States of Fort Ord, California did not reserve the power to regulate insurance agents and that the United States has exclusive jurisdiction there and that the commissioner has no jurisdiction to regulate the conduct of an insurance agent there.

We deem it unnecessary to discuss respondent's contention that, for various reasons, the United States had not assumed jurisdiction of the regulation of California insurance agents at Fort Ord in matters of this kind for, assuming that its jurisdiction at Fort Ord is exclusive, nevertheless the commissioner had the power to revoke appellant's licenses for acts at Fort Ord violative of the California Insurance Code. The purpose of the provisions of the Insurance Code is as stated in section 1639, "to protect the public by requiring and maintaining professional standards of conduct on the part of all insurance agents and insurance brokers acting as such within this State." We are not concerned here with the question of the state making regulations concerning the selling of insurance on government reservations. We are concerned with the protection of the public from one holding a state insurance agent's license and who, regardless of whether his acts occur within or without the state, demonstrates that he does not maintain professional standards in his conduct of the insurance business. The situation is very similar to that concerning attorneys.

In *Geibel* v. *State Bar* (1938), 11 Cal.2d 412 [79 P.2d 1073], it was held that an attorney could be disciplined for conduct in the federal courts. It was stated there: "If an attorney admitted to practice in the courts of this state commits acts in reference to federal court litigation which reflect on his integrity and fitness to enjoy the rights and privileges of an attorney in the state courts, proceedings may be taken against him in the state court." (P. 415.) A similar case is *State ex rel. Hardin* v. *Grover* (1907), 47 Wash. 39 [91 P. 564], where it is stated that "any court, the bar of which

the delinquent is a member, has jurisdiction to disbar for unprofessional conduct, when and whenever committed . . ." *In re Lamb* (1905), 105 App. Div. 462 [94 N.Y.S. 331], also held that the state court could disbar an attorney for unprofessional conduct in judicial proceedings in the federal courts.

In *In re Porep* (1941), 60 Nev. 393 [111 P.2d 533], and *People* v. *Lindsey* (1929), 86 Colo. 458 [283 P. 539], the attorneys were disciplined for acts outside the jurisdictions even where the acts seemingly were lawful where done. In the Porep case, Nevada disciplined one of its attorneys for advertising in a San Francisco newspaper even though a California Bar committee had previously determined that the conduct did not justify disciplinary action. And in the Lindsey case it was held that a juvenile court judge could be disbarred there for violation of Colorado statutes making it unlawful for a judge to act as an attorney or counsel where the judge acted as counsel in a probate proceeding in New York.

*Matter of Application of Shepard* (1917), 35 Cal.App. 492 [170 P. 442], and *Selling* v. *Radford* (1916), 243 U.S. 46 [37 S.Ct. 377, 61 L.Ed. 585], are not applicable because the jurisdiction where the conduct took place had already adjudged the conduct to be unlawful before the disciplinary proceedings in the other jurisdiction took place.

In his argument on this subject appellant states: "A state may not punish one for doing in exclusively federal territory what by the law of the United States was lawful . . ." He thereby implies that it is lawful for an agent selling insurance on government property to misrepresent the terms of a policy to a prospective buyer—a proposition that is absurd on its face.

### 4. *The Constitutions.*

█ Appellant contends that the action of the commissioner constituted a violation of the equal protection clause of the United States Constitution (Fourteenth Amendment, § 1) and of the uniform operation clause of the California Constitution (art. I, § 11). Thus he contends that a California licensee might have his license revoked for misrepresentations at Fort Ord where a licensee of another state doing business there and making the same misrepresentations might not have his license revoked. The mere fact that California requires higher standards of its licensees wherever they act than another state does of its licensees does not violate either of the constitutional provisions. See *In re Porep, supra,* 111 P.2d 533, and *People*

v. *Lindsey, supra,* 283 P. 539, disbarring attorneys for acts in states other than the licensing state which in those states would not be grounds for disbarring attorneys licensed there.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied September 11, 1958, and appellant's petition for a hearing by the Supreme Court was denied October 10, 1958.